Jacob Long et al. *vs.* S. D. Shackleford et al.

It is a well settled rule, that the compromise of a matter in dispute is a sufficient consideration for a contract, and will bind both parties to the settlement when entered into without fraud.

The rule extends to executors and administrators. *Barry* v. *Parker,* 3 S. & M. 625, cited and confirmed.

The circuit court should not entertain jurisdiction of a motion to enter satisfaction of a judgment as to any of the parties, unless it is to be a satisfaction entirely and as to all.

The overruling the motion does not bar relief by bill in chancery.

In error from the northern district chancery court at Carrollton; Hon. Henry Dickinson, vice-chancellor.

H. H. Fultz, the first administrator of Samuel Long, deceased, recovered judgment on the 28th October, 1844, in the circuit court of Holmes county against Robert Cook, for

$951.15, part of which has been paid; that a writ of *fi. fa.* was issued on said judgment, and that said Cook and the sheriff of said county represented to the defendants in error, Shackleford, Harris, and Sanders, that it had been levied on the 28th January, 1845, on two negro men slaves, June and Isaac, as the property of said Cook; that after said pretended levy, Cook gave a forthcoming bond for the delivery of said negroes on the day and at the place of sale; that said Shackleford, Harris, and Sanders, believing said negroes were the property of Cook, signed and executed said bond as the sureties of Cook; said bond was forfeited on the 21st April, 1845; that Cook either did not own said negroes at the time of the levy of said execution, or the forfeiture of said bond, or that the names and description of said slaves, inserted in said bond and in the return of the sheriff, were fictitious, and not the names of any negroes at all, and that there was no levy on the property of said Cook, by which they, said Shackleford, Harris, and Sanders were deceived; and that it was impossible for them, or said Cook, to deliver said negroes in discharge of the bond; that said Samuel Long never conveyed the land for which the notes upon which said judgment is founded, were given; nor has Cook any other title thereto than the title conveyed by a bond for title.

That said Shackleford, on behalf of himself and his two co-sureties in said bond, proposed to said Fultz, whilst he was said Long's administrator, to compromise the pretended claim which he asserted against them as obligors in said forthcoming bond, and to avoid litigation and costs, offered to give him $175 for a full discharge from all liability as obligors in said bond; and that Fultz, knowing the invalidity of said bond, by his attorney, W. Brooke, accepted the offer; and said sum of $175 was settled by Shackleford with Fultz; and Fultz, as administrator as aforesaid, thereupon fully discharged and released, in writing, Shackleford, Harris, and Sanders from said bond. The release is made exhibit to the bill.

That since said compromise and release were made, said Fultz has surrendered his letters of administration on the estate of said Samuel Long; and letters of administration *de bonis non* have been granted to said Jacob Long, who has disre-

garded the compromise made by said Fultz, and has had execution issued on the judgment on said forthcoming bond, and threatens to make the money thereon out of said Shackleford, Harris, and Sanders, sureties of said Cook as aforesaid; said Jacob Long, administrator as aforesaid, Cook, and sheriff Brall are made defendants to the bill; a perpetual injunction of the judgment on said forthcoming bond, as to said Shackleford, Harris, and Sanders, is prayed.

A *pro confesso* was taken as to Cook.

The answer of Jacob Long states, in substance, that he is the administrator *de bonis non* of Samuel Long; admits that Fultz, as administrator of said Samuel Long, recovered judgment against Cook; that he gave a forthcoming bond, with Shackleford, Harris, and Sanders as sureties; that the bond was forfeited; knows nothing of the actings of Cook and the sheriff and defendants in relation to the levy; believes the sheriff's return is true, and the bond legal and valid; knows nothing of the compromise made by Fultz with defendants in error, or the discharge or release from the judgment, and requires proof thereof; states that the compromise and release, if entered into, were illegal and void; that Fultz had no authority to make them; states, that at the June term, 1848, of the Holmes circuit court, complainants made a motion to have satisfaction of said judgment entered; that said motion was overruled; insists, that the judgment on the motion is a bar to the relief sought in the bill. A copy of the judgment on said motion and the evidence therein, are contained in the answer.

W. Brooke, a witness examined on the trial of said motion, states, that he was the attorney of Fultz in the suit against Cook, and that Shackleford threatened to enjoin said judgment, on the ground that Cook owned no such property as that specified in the forthcoming bond; witness made inquiry, and ascertained Cook never owned such negroes as are named in said bond; then entered into the compromise, as mentioned in the bill, by the direction of Fultz; then Long proved, that before said motion was made, that defendants in error had filed a bill in the chancery court, (the bill in this cause,) enjoining said judgment, on the ground, among others, that they had been

released from said judgment, as stated by said Brooke; and that said suit was then pending.

The depositions of John A. Williams, W. Boyle, J. R. Mayo, A. V. Rowe, Thomas J. Childress, and Robert Cook, were taken on behalf of defendants in error, — Cook's, by leave of the court.

They all state, that Cook did not own the negroes recited as levied on in the forthcoming bond; that he had no such negroes in his possession at that time. Cook states positively, that no levy was in fact made; that no negroes were present, and that he owned none of the name or description mentioned in the bond; Childress was his overseer, and the other witnesses lived in the same town with Cook.

The chancery court, on the 13th April, 1849, rendered a final decree, declaring the bond null and void as to Cook's securities, and enjoining Long from prosecuting the judgment on the bond against such sureties, and that they pay the costs of the suit. The decree recites, that Cook owned no such negroes as those mentioned in the bond; that the levy was fictitious, and that the other material allegations in the bill are true. No relief was prayed or granted as to Cook.

Long brought the case, by writ of error, to this court.


*D. J. Red,* for appellants.

There was no evidence introduced to prove the first ground for the injunction in complainant's bill, "that said Cook and the sheriff represented to complainants that an actual levy was made." Cook being the principal debtor in the execution, his representations could not affect the rights of the creditor, unless the creditor was implicated in them. *Graves et al.* v. *Tucker,* 10 S. & M. 9.

In the case of *Walker* v. *Shotwell et al.,* 13 Ib. 544, it has been decided, that the names of negroes being inserted in the bond given by defendant in an execution, and in that condition the bond was handed to the sheriff, is equivalent to actual seizin. It was an admission by the defendant in the execution, that a levy had been made.

The parties cannot expect to be released from the forthcom-

ing bond because the names of the negroes in the bond are fictitious; and it is impossible to perform the condition of the bond, for this existed at the time of the execution of the bond as much as it does now; and such an impossibility can only have the effect to make the bond single and unconditional. It was the folly of the obligors to enter into such an obligation, from which they can never be released. 2 Black. Com. (*m.*) p. 340.

A judgment of a small portion of a debt is not a sufficient consideration to support a release from all the balance. Chitty, Con. 12. The pretended release was not even alleged to be under seal nor proven to be so, or even produced. In pleading a release, it must be alleged that it was under seal. *Bender* v. *Sampson*, 11 Mass. 42; *Gibson* v. *Weir*, 1 J. J. Marsh. 446.

If the release had been proven to be under seal, that would not do away with the necessity of a consideration; for under our statute the consideration of sealed instruments may be inquired into like unsealed instruments. If the release was without a consideration, and not under seal, it is void. 1 Cow. R. 122; 13 Johns. 87; *Fitch* v. *Sutton*, 5 East, 232. Complainants did not pay any portion of the forfeited forthcoming bond, and consequently there was no consideration to support the release as set up.

The act of the legislature of 1846 prescribes the manner in which administrators and executors may compromise and sell the bad claims of deceased persons' estates, and repealed all other acts coming in conflict with the provisions of that act. The compromise and release set up in the bill of complaint was made in 1847. It is contended, that executors and administrators cannot make a compromise or execute a release in any other manner than that prescribed in the act of 1846. If this position be correct, then the pretended compromise and release are void, and the decree of the vice-chancellor is erroneous. Acts of Legislature, 1846, 147–149, §§ 6, 11.

*Dyer* and *Hooker*, for appellees.

There must be a consideration to uphold a forthcoming bond. Without some consideration, such a bond imposes no

obligation upon the obligors, and the want of consideration in sealed instruments may, under our law, be shown, as well as in simple contracts. Hutch. Code, 847. It is, then, important to determine what the consideration of a forthcoming bond is. The consideration of such a bond is the redelivery of the property levied upon to the defendant in the execution. *Long* v. *United States Bank*, Frem. Ch. R. 375; *Walker* v. *Shotwell*, 13 S. & M. 549.

If the property specified in the bond is not subject to the execution, the sureties may show this, and upon doing so, a perpetual injunction would be awarded against the statutory judgment on the bond. *Lusk* v. *Ramsay*, 3 Munf. R. 417; Freem. Ch. R. 381. This shows that the bond may be looked into, and that the mere recital in the bond, that certain property was levied upon, does not preclude the securities from showing that the pretended property had no existence in fact. If the property had no existence, or was not subject to the execution, its non-delivery does not injure the plaintiff in the execution. Suppose a promissory note was stated in the bond to have been levied upon, and the condition of the bond was to deliver it on the day of sale, would its non-delivery, by the surety, make him liable? I think not; because if delivered it could not be sold by the sheriff under the execution. Its non-delivery would consequently work no injury to the plaintiff in the execution; and having sustained no injury, he should have no recourse upon the sureties in the bond. What would be the difference between giving a bond for the forthcoming of a note, and property having no existence? None. Both would be void.

The case of *Walker* v. *Shotwell*, 13 S. & M. 544, is much relied on by the other side. I will admit it decides that a fictitious levy upon actual property, if recited in the bond, is, between the parties, good, and to that extent is against me, but it goes no further. In that case it was not pretended the property was fictitious, in this it is; hence the cases are distinguishable. Judge Sharkey, in delivering the opinion of the court, refers to *Long* v. *United States Bank*, and says Judge Buckner decided, that a bond given for fictitious property was

void. He does not dissent in terms from the doctrine laid down by Chancellor Buckner; but, on the contrary, I think, sanctions it.

In the same opinion, Judge Sharkey cites the case of *Syme* v. *Montague*, 4 Hen. & Munf. 180, which held a bond was good where the defendant had "a qualified property" in the thing levied on, because the sureties could deliver said "qualified property" in discharge of the bond. Judge Sharkey clearly puts it upon this ground. Now property having no existence, could not be delivered, and if a bond reciting "qualified property" is good, because that property could be delivered, it follows necessarily, that a bond reciting fictitious property is void, because it could not be delivered. I might here rest my case with a confident assurance, that the decree of the chancellor would be affirmed on the first point made by me; but as I consider the second position not less conclusive against the plaintiff in error, I will now notice it.

In *Berry* v. *Parkes*, 3 S. & M. 625, this court has said: "An executor or administrator may compound or release a debt." In 10 S. & M. 404, Judge Clayton reiterates the same language, and says that executors or administrators "may compound debts, or enter into arbitrations," and adds that. "these acts will be upheld, if they are fair, beneficial to the estate, free from fraud," &c. In the case at bar, the compromise and release "are free from fraud," were "fair and beneficial to the estate." I say they were beneficial to the estate, because by it part of the debt was paid, a suit prevented, and the administrator had the right to enforce the vendor's lien upon the land for the balance of the debt; or if preferred, the contract could have been entirely abandoned, Cook having but a title bond for the land, and failing to pay the purchase-money, and the heirs of Long could have recovered the land. *Holloway* v. *Moore*, 4 S. & M. 594. See also 2 Lomax, 230; 3 P. Wms. 381, as to the power of an executor or administrator to compound or release a debt due to the deceased.

It is said that the act of 1846, (Hutch. Code, 681,) provides how a debt due to an estate may be sold or compromised, and the conclusion is sought to be drawn, that it can be done in no

other manner. The premises do not justify the conclusion. The object of that statute was not to limit, but to enlarge the powers of executors and administrators. The mischief was not that they compromised too much, but too little. Prior to the statute they compromised at their own risk; under the statute they incur no liability. The design was to provide a way in which compromises could be made, without endangering administrators, and thereby induce them to enter into them, when the interests of estates seemed to require them, still leaving to them the power to compromise at their own risk, as it stood at the passage of the act. It is true the compromise in question was not made in pursuance of that statute; but, if I am right, Fultz was authorized to make it independent of the statute, and it is legal and valid.

Mr. Justice YERGER delivered the opinion of the court.

This case presents the question, Whether a compromise made with an administrator, by which he agrees, upon payment of part of a judgment, to release the parties from the remainder, is a valid contract, obligatory upon the administrator and all others interested in the estate.

It is well settled as a general rule, that the compromise of a matter in dispute, is a sufficient consideration for a contract, and will bind both parties to the settlement, when made and entered into without fraud.

We are not aware of any principle of law, or any decision of the court, which would prevent the application of this rule to a compromise entered into by an executor and administrator.

In the case of *Berry* v. *Parkes*, 3 S. & M. 625, this court recognized the right of an administrator to compromise a suit, and held that he might release or compound a debt due to the estate, and that he would not be accountable for any loss in such a case, without wilful misconduct or fraud.

This case meets our approbation. We, therefore, are of opinion, that the compromise entered into by the complainants with Fultz, the original administrator, is valid and obligatory, and entitles them to a perpetual injunction of execution upon the forthcoming bond against them.

The motion made in the circuit court of Holmes county, to have satisfaction entered of the judgment as to the sureties, was properly overruled. The circuit court should never entertain jurisdiction of a motion to enter satisfaction of a judgment as to any of the parties, unless it is to be a satisfaction entirely and as to all.

The overruling the motion in this case, was no bar to relief by bill in chancery.

In reference to the proof of compromise and settlement, it is true, that it only appears to be contained in the bill of exceptions taken to the judgment of the circuit court overruling the motion to enter satisfaction of the judgment. As contained in that bill of exceptions it is very full and ample; and as the vice-chancellor in his decree recites that the material allegations in the bill are true, we must presume, that the evidence set out in the bill of exceptions was read on the trial of the suit in chancery without objection.

Let the decree be affirmed.